**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **THE TRAVELERS INDEMNITY CO.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 10-cv-448 (LO/JFA) |
| | ) | |
| **TRAVELLERS.COM,** | ) | |
| | ) | |
| Defendant in rem. | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's June 24, 2011 Amended Motion for Partial Summary Judgment (Doc. 142). No party timely filed an opposition to Plaintiff's Motion. On July 29, 2011, the Court granted Plaintiff's Motion (Doc. 194) and undertook to issue this memorandum opinion. On August 31, 2011, more than 60 days after Plaintiff filed its Motion, and after dismissal of an appeal of the Court's July 29, 2011 order, Mr. Deepak Rajani filed his opposition to Plaintiff's Motion. For the following reasons, Plaintiff's motion is GRANTED.

I. BACKGROUND

On May 3, 2010, Plaintiff The Travelers Indemnity Co. ("Travelers") filed an in rem action against Defendant TRAVELLERS.COM, a domain name registered to a Mr. Deepak Rajani, who apparently resides in Germany. Doc. 1. The complaint alleged cybersquatting under 15 U.S.C. § 1125(d); trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a); and dilution under 15 U.S.C. § 1125(c). Doc. 1 at ¶¶ 37-44. Neither Mr. Rajani nor Defendant in rem TRAVELLERS.COM answered or moved to dismiss within the appropriate timeframe, but Mr. Rajani did submit a response by fax machine on March 28, 2011. Notice of Mot. & Mot. For Sanctions ("Rajani Answer"), Doc. 34 at ¶¶ 95-100. On April 6, 2011, the Court granted Mr. Rajani's motion to add himself as a co-defendant and deemed Mr.

Rajani's March 28 submission to be his Answer. Doc. 37. Defendants filed several notices of appeal following the Court's April 6 order.[1]

On June 8, 2011, Plaintiff filed a motion to amend its Complaint to proceed against Mr. Rajani personally, instead of in rem against TRAVELLERS.COM. Doc. 62. Defendants opposed the motion. Doc. 102. On June 17, 2011, Plaintiff agreed to withdraw the motion, and United States Magistrate Judge John F. Anderson then determined that the case should proceed in rem against TRAVELLERS.COM alone because although Mr. Rajani had appeared to make a claim to the name, he had not submitted to personal jurisdiction in this Court. Doc. 124.

On June 24, 2011, before the close of discovery, Plaintiff filed its Motion for Partial Summary Judgment on the claims for cybersquatting and trademark infringement, Counts I, II, and III.[2] Doc. 142. On July 29, 2011, the date set for hearing on the Motion, the Court entered an order granting Plaintiff's Motion and ordering VeriSign, Inc., the registry assigned to administer domains within the ".com" top level domain, to transfer TRAVELLERS.COM to Plaintiff through its chosen registrar. Doc. 194. The Court indicated that a memorandum opinion would be forthcoming. Mr. Rajani submitted no opposition to Plaintiff's Motion before the July 29 hearing, instead filing an opposition on August 30, 2011, and a duplicate on September 11, 2011. Docs. 205 & 211.

Meanwhile, on August 4 and 12, 2011, Mr. Rajani filed notices of appeal of the Court's July 29 order granting summary judgment on Counts I, II, and III. Docs. 195 & 199. On August 17, 2011, Plaintiff filed a motion to voluntarily dismiss Count IV, the remaining claim, and the Court granted dismissal of Count IV. Docs. 201 & 207.

---

[1] In addition to filing numerous notices of appeal, Mr. Rajani has filed numerous frivolous motions. On June 8, 2011 alone, for example, he filed 30 motions, all of which were denied. Docs. 161, 171, 178.

[2] In the June 24 filing, Plaintiff amended its motion for partial summary judgment filed June 16, 2011. Doc. 119.

## II. JURISDICTION

As a preliminary matter, the Court must address whether Mr. Rajani's appeal of the Court's July 29 order has deprived this Court of jurisdiction to issue this memorandum opinion. Doc. 195. In general, filing of a notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals. *See In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991). An exception to the rule, however, states that a district court does not lose jurisdiction to proceed as to matters in aid of the appeal. *Id.* The Court finds that the issuance of this memorandum opinion will aid the court of appeals in its review of the Court's July 29 order, and that therefore the Court has not been deprived of jurisdiction to issue this memorandum opinion.

The Court finds that it has subject matter jurisdiction over this matter under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 & 1338.

The Court finds that it has in rem jurisdiction over Defendant TRAVELLERS.COM under 15 U.S.C. § 1125(d)(2), which permits an in rem action where the owner of a mark is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under § 1125(d)(1). 15 U.S.C. § 1125(d)(2)(A)(ii)(I). As the Court will explain further below (see Section V.A *infra*), the TRAVELLERS.COM domain name violates Plaintiff's rights under § 1125(a), and therefore satisfies the first element of in rem forfeiture under § 1125(d)(2)(A)(i). TRAVELLERS.COM satisfies the second requirement for in rem forfeiture because the registrant of the accused domain name TRAVELLERS.COM, Mr. Rajani, resides in Germany and is therefore unavailable to civil suit under the Court's in personam jurisdiction. 15 U.S.C. § 1125(d)(2)(A)(ii). As United States Magistrate Judge John F. Anderson determined in his June 17 Order, the Court has in rem jurisdiction over TRAVELLERS.COM.

Venue is proper in this Court because VeriSign, Inc., the registry for all ".com" domain

names, has its corporate headquarters in Dulles, Virginia, which is located in this District and Division. 28 U.S.C. § 1391(b)(2); 15 U.S.C. §§ 1125(d)(2)(A) & (C).

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The parties must support their assertions that a fact cannot be or is genuinely disputed by reference to particular parts of materials in the record, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1).

## IV. UNDISPUTED FACTS

Because no party filed an opposition to Plaintiff's Motion for Partial Summary Judgment before the Court entered its July 29 order, the Court's decision was based on the record and facts set forth in the Plaintiff's statement of undisputed facts. Mr. Rajani untimely filed an opposition to Plaintiff's Motion, which offered no disputed facts that would challenge Plaintiff's entitlement to partial summary judgment. Doc. 205.

1. Plaintiff is a leading provider of property and casualty insurance and surety products and risk management services and products to a wide variety of businesses, government units, associations, and individuals. Travelers is Number 106 on the FORTUNE 500 list of largest U.S. companies. Dating back to 1853, Travelers is one of the oldest insurance organizations in the United States. Travelers' insurance products and services are sold in all 50 states through independent agents and brokers, exclusive agents and brokers, direct marketing

(including Internet websites), and/or salaried employees. Declaration of Shane Boyd ("Boyd Decl."), Doc. 143-1 at ¶¶ 2-3.

2. For more than 140 years, Travelers and its affiliated entities and/or predecessors have continuously used the TRAVELERS name and mark in various forms (collectively, the "TRAVELERS Mark") to identify and distinguish Travelers and its products and services. Travelers first used the TRAVELERS Mark for its insurance products and services and/or risk management services in 1865. Travelers has registered the TRAVELERS Mark at the United States Patent and Trademark Office ("USPTO") under Reg. No. 1,611,053 for a variety of insurance-related products and services. Boyd Decl. at ¶¶ 4-5.

3. Since 1996, Travelers has owned and operated a website at the domain name TRAVELERS.COM, which prominently displays the TRAVELERS Mark and offers information regarding Travelers and its insurance, surety, and risk management products and services offered under the mark. Boyd Decl. at ¶ 6.

4. Visitors to the TRAVELERS.COM website may, among other things, obtain insurance quotes, find insurance agents, report claims, and manage existing insurance accounts. Millions of unique users visit the TRAVELERS.COM website annually. Boyd Decl. at ¶ 7.

5. Over the years, sales of products and services under the TRAVELERS name and mark have been substantial. Travelers is currently the second-largest writer of commercial U.S. property casualty insurance and the second-largest writer of U.S. personal insurance through independent agents in the U.S. Travelers is represented by approximately 13,000 independent agencies and brokerages countrywide. Boyd Decl. at ¶ 8.

6. As a result of Travelers' commercial success, revenues from products and services offered, sold, and advertised in connection with the TRAVELERS Mark have been

immense, including revenues of $25 billion+ in 2010, $24 billion+ in 2009, $24 billion+ in 2008, $26 billion+ in 2007, $25 billion+ in 2006, and $24 billion+ in 2005. Boyd Decl. at ¶ 9.

7. Travelers has expended many millions of dollars (including tens of millions of dollars annually since at least 2007) advertising and promoting Travelers' products and services under the TRAVELERS Mark in various media. Travelers has engaged in nationwide television advertising prominently featuring the TRAVELERS Mark, including award-winning advertising campaigns reaching millions of viewers. The TRAVELERS Mark has also been extensively used in marketing and promotional materials, including newsletters and bulletins, as well as in web-based advertising, advertising appearing in national and regional print periodicals, and other high-visibility advertising spaces such as airports and professional and college sports venues. In addition, high-profile sponsorships such as the Travelers Championship PGA Tour golf tournament have resulted in significant exposure by consumers to the TRAVELERS Mark. Boyd Decl. at ¶ 10.

8. Travelers, its products and services, and its TRAVELERS Mark have for many years also received unsolicited media coverage including, for example, in national publications such as USA TODAY, The New York Times, The Washington Post, Forbes, Fortune, and Advertising Age, as well as in numerous national television programs and online publications, such as MSNBC, CNNMoney.com, and washingtonpost.com. This publicity and acclaim from third party media sources has resulted in substantial additional exposure of the TRAVELERS Mark to consumers. Boyd Decl. at ¶ 11.

9. Mr. Rajani is the owner and registrant of the TRAVELLERS.COM domain name. Doc. 30 at ¶ 21; Declaration of Anna C. Bonny ("Bonny Decl."), Doc. 143-2, at ¶ 2; Declaration of Robin R. Fuller ("Fuller Decl."), Doc. 143-3, at ¶ 4. In April 2009, Travelers became aware of

the TRAVELLERS.COM domain name and website and the display of pay-per-click advertisements for insurance products and services on that website. Fuller Decl. at ¶ 2. At that time, the TRAVELLERS.COM website displayed "Travellers.com" prominently on its website, touted itself as a "gateway to sites on the Internet for insurance," and provided insurance-related advertisements and links to third-party websites, including direct and indirect competitors of Travelers. Fuller Decl. at ¶ 2.

10. In May 2009, Travelers, through its attorneys, sent a demand letter to Mr. Rajani, as the registrant of TRAVELLERS.COM, regarding the unlawful nature of the TRAVELLERS.COM website. Travelers' letter expressly advised Mr. Rajani of Travelers' rights in the TRAVELERS Mark, including its federal trademark registration for the mark (a copy of which was attached to the letter). Travelers also made clear that Mr. Rajani's activities constituted cybersquatting, among other things. In response, Mr. Rajani admitted that he was the sole owner of the TRAVELLERS.COM domain name, but denied that he had engaged in any wrongdoing. Fuller Decl. at ¶¶ 3-4.

11. More than two years later, despite Travelers' objections and the filing of this lawsuit, The TRAVELLERS.COM website continues to prominently display "travellers.com" and insurance-related, paid-placement ads and links to commercial websites. Bonny Decl. at ¶¶ 3-5. For example, the TRAVELLERS.COM website contains advertising links for major competitors such as GEICO, Progressive, Allstate, and Nationwide. Bonny Decl. at ¶ 3, Fuller Decl. at ¶ 5. These companies offer insurance products and services that are identical, directly competitive, or closely related to those sold or provided by Travelers in connection with the TRAVELERS Mark. Fuller Decl. at ¶ 5.

12. Mr. Rajani registered TRAVELLERS.COM for the purpose of conducting

commercial activity. Rajani Answer at ¶ 97. Increasing website traffic for the TRAVELLERS.COM domain was a necessary component of Mr. Rajani's business use of TRAVELLERS.COM. Rajani Answer at ¶ 97. The website accessed under domain name TRAVELLERS.COM displays a website advertising a pay-per click advertising program. Bonny Decl. at ¶ 5. As Mr. Rajani noted in one of his earlier filings, the purpose of the ads and links on his domain in 2008 was to divert users who navigate to the TRAVELLERS.COM website to third-party websites (which include websites offering competing products and services). Doc. 10 at ¶ 22. It is undisputed that TRAVELLERS.COM is currently participating in a program operated by Sedo, an advertising company, which pays Mr. Rajani each time a user clicks on an advertisement listed on the TRAVELLERS.COM web page. Bonny Decl. at ¶ 5.

13. The TRAVELLERS.COM domain name incorporates the TRAVELERS Mark in its entirety, differs from the TRAVELERS mark by only one letter (i.e., an extra "l"), and is an alternative spelling of the word "Travelers." Bonny Decl. at ¶ 6. U.S. dictionaries, for example, list the alternative spellings "travelers" and "travellers" with the identical definition. Bonny Decl. at ¶ 6.

## V. COUNT I – 15 U.S.C. § 1125(d)

The Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), Pub. L. 106-113, §§ 3001-02 (1999) (current version at 15 U.S.C. § 1125(d) (2006)), amended the Lanham Act to permit the owner of a protected mark to pursue an action against the owner of a domain name that violated the owner's rights in the mark. The ACPA was "carefully and narrowly tailored . . . to extend only to cases where the plaintiff can demonstrate that the defendant registered, trafficked in, or used the offending domain name with bad-faith intent to profit from the goodwill of a mark belonging to someone else." S. Rep. No. 106-140, at 12 (1999). A plaintiff can pursue an in rem action under the ACPA against a domain name that violates any right of the owner of a

mark registered in the Patent and Trademark Office, or is protected under paragraph (a) or (c) of § 1125, so long as the owner of the mark cannot obtain in personam jurisdiction over a person who—with bad faith intent to profit—registers, traffics in, or uses a domain name that is identical or confusingly similar to the plaintiff's mark. 15 U.S.C. §§ 1125(d)(1), (2)(A)(i).

**A. In rem jurisdiction**

The Court must initially determine whether the Plaintiff is entitled to recover against Defendant TRAVELLERS.COM under the ACPA's in rem provisions. 15 U.S.C. § 1125(d)(2)(A). The Court evaluates whether the use of the TRAVELLERS.COM domain name "violates any right of the owner of a mark registered in the Patent and Trademark Office," or is protected under § 1125(a) or (c). 15 U.S.C. § 1125(d)(2)(A)(i). The Court finds that the TRAVELERS mark is protected under § 1125(a), and need not evaluate whether it is protected under § 1125(c).

Plaintiff has produced undisputed evidence of its ownership of a federally registered trademark in the TRAVELERS mark. The federal trademark registration offered by Plaintiff is prima facie evidence of the mark's validity, and no party offers contrary evidence. 15 U.S.C. § 1057(b). Plaintiff has also shown that Mr. Rajani used the TRAVELLERS.COM domain name for the activities alleged in the Complaint, and that he did so "in commerce." The record contains several admissions by Mr. Rajani that he registered TRAVELLERS.COM. Doc. 30 at ¶ 21; Rajani Answer at ¶ 97; Fuller Decl. at ¶ 4. Mr. Rajani admitted squarely in his answer that he had used TRAVELLERS.COM in commerce. Rajani Answer at ¶¶ 97-98. Mr. Rajani conceded that his purpose and expectation was that he would profit from the use of TRAVELLERS.COM to generate traffic to his website. He said, essentially, that he registered TRAVELLERS.COM for his commercial and business activities, and that he used TRAVELLERS.COM to generate traffic to his website as a necessary component of his business. Rajani Answer at ¶ 97. Mr.

Rajani therefore used TRAVELLERS.COM in commerce in connection with the sale, offering for sale, and advertising of insurance services. *See Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005).

The next question is whether the use of TRAVELLERS.COM in this fashion was "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]" 15 U.S.C. § 1125(a)(1)(A). The Fourth Circuit uses a multi-factor test to evaluate claims of confusion under § 1125(a)(1)(A). *See Lamparello, supra*, 420 F.3d at 314-15 (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996). The key factors are: (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods/services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion resulting from the use of the mark. *See Lamparello*, 420 F.3d at 314-15 (citing *Pizzeria Uno Corp.*, 747 F.2d at 1527). These factors are non-exclusive, *see Sara Lee Corp.*, 81 F.3d at 463-64 (considering quality of defendant's product and sophistication of the consuming public), and not all are relevant or equally emphasized in each case. *Lamparello*, 420 F.3d at 314-15; *Pizzeria Uno Corp.*, 747 F.2d at 1527.

As Plaintiff argues, the first three factors weigh heavily in its favor. Under factor 1, the strength of the mark, the TRAVELERS mark is very strong because it is federally registered, and has been used in the marketplace for many years. As to factor 2, the TRAVELERS mark and the TRAVELLERS.COM domain name are quite similar. "Travellers" and "travelers" sound

identical when pronounced in the English language and the two words differ only by a single letter. The TRAVELLERS.COM domain name is based on a misspelling of a word which, in American usage, is correctly spelled "travelers."[3] *See* American Heritage Dictionary of the English Language 1366 (1976). As for factor 3, the similarity of the services, the insurance services signified by the TRAVELERS Mark are the same type as those advertised on the TRAVELLERS.COM website. The advertised products and services were identical, directly competitive, or closely related to those sold by Plaintiff in connection with the TRAVELERS mark. Fuller Decl. at ¶ 5. Moreover, it is undisputed that this is why Mr. Rajani chose the TRAVELLERS.COM domain name—it was similar enough to the TRAVELERS Mark that it would generate traffic to his website that could be diverted for profit. These facts justify a finding that factor 6, which inquires about the defendant's intent, weighs in favor of likely confusion.

Factors 4 and 5, too, suggest a likelihood of confusion. Both Travelers and Mr. Rajani promote insurance-related advertising on their websites. As such, they use similar website facilities for their businesses (factor 4) and use similar advertising on those websites (factor 5). The Court holds that the undisputed evidence supports the conclusion that the use of the TRAVELLERS.COM mark is likely to result in confusion violating § 1125(a).

Because TRAVELLERS.COM violates Plaintiff's rights under § 1125(a) and Plaintiff is unable to obtain in personam jurisdiction over a person who would have been a civil defendant under § 1125(d)(1), the Court concludes that the in rem requirements of § 1125(d)(2) have been satisfied.

[3] In British usage, "traveller" is a correct spelling. Oxford English Dictionary, "traveller" (2d ed. 1989, online ed. Sept. 2011), *available at* http://www.oed.com/view/Entry/205271 (last accessed Nov. 8, 2011).

**B. Cybersquatting**

Having established that the Court may grant relief in rem against TRAVELLERS.COM, the Court next evaluates whether Plaintiff has shown that liability attaches to TRAVELLERS.COM under the substantive provisions of § 1125(d)(1). To demonstrate entitlement to summary judgment, Plaintiff must produce undisputed facts showing that Mr. Rajani: (1) had a bad faith intent to profit from TRAVELLERS.COM; and (2) registered, trafficked in, or used TRAVELLERS.COM in a prohibited manner. 15 U.S.C. § 1125(a)(1)(A).

**1. Bad Faith Intent to Profit**

First, Plaintiff must show that Mr. Rajani had bad faith intent to profit from TRAVELLERS.COM. In determining whether a person has a bad faith intent, the Court considers a non-exhaustive list of nine statutory factors. 15 U.S.C. § 1125(d)(1)(B)(i). The Court may take into account other factors which, taken together, comprise the totality of the circumstances. *Newport News Holdings, Inc. v. Virtual City Vision, Inc.*, 650 F.3d 423, 435 (4th Cir. 2011) (citing *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir. 2001)).

The first two statutory factors, whether Mr. Rajani had trademark or intellectual property rights in TRAVELLERS.COM or used TRAVELLERS.COM as a legal name, weigh in favor of a finding of bad faith. *See* 15 U.S.C. §§ 1125(d)(1)(B)(i)(I) & (II). Mr. Rajani has offered no evidence indicating that he has recognizable trademark or other legitimate intellectual property rights in TRAVELLERS.COM, or that the domain name is used to identify a legal person. He asserted in his answer that he had a first-come, first-served right to the domain name, and that his 12-year usage of TRAVELLERS.COM conferred upon him protectable rights in the use of the domain name. Rajani Answer at ¶ 102. Mr. Rajani's invocation of the rule of capture would pose a different issue at common law, of course, *see Pierson v. Post*, 3 Cai. R. 175 (N.Y. Sup. Ct.

1805) (ownership of wild animal acquired by bringing the animal within certain control), but it is immaterial to the question of bad faith under the ACPA.

The third, fourth, and fifth statutory factors relate to bona fide uses of TRAVELLERS.COM. 15 U.S.C. §§ 1125(d)(1)(B)(i)(III)-(V). Mr. Rajani registered and used TRAVELLERS.COM many years before this action was brought. Had the use of the site been legitimate, however, it would have tended not to pose a danger of confusion. Mr. Rajani has presented no evidence contradicting the Plaintiff's evidence that he offered services or goods targeting Plaintiff's potential customers and attempted to divert them to competitors for his own purposes. Indeed, Mr. Rajani admitted in his Answer that he registered and used TRAVELLERS.COM both for commercial purposes and to further his business's operations. Rajani Answer at ¶ 97. It is apparent that TRAVELLERS.COM would have the affirmative effect of harming Plaintiff's goodwill by diverting customers to a page containing advertisements by Plaintiff's competitors. Moreover, the confusion resulting from the close resemblance of TRAVELLERS.COM and Plaintiff's Mark indicate that the diversionary effect was not accidental, but rather the natural and probable result of registering a misspelling of the TRAVELERS Mark.

The ninth statutory factor, the strength of the TRAVELERS mark, is the obvious reason for Plaintiff's long-running commercial use of the TRAVELLERS.COM domain name. TRAVELERS is a public, widely-known mark, and is registered in the federal trademark database. 15 U.S.C. § 1125(d)(1)(B)(i)(IX). The Court therefore concludes that Plaintiff has bad faith intent to profit from the use of TRAVELERS through commercial use of TRAVELLERS.COM.

**2. Prohibited Use of TRAVELLERS.COM**

Second, Plaintiff must show that Mr. Rajani registered, trafficked in, or used

TRAVELLERS.COM in a manner prohibited by the ACPA. 15 U.S.C. § 1125(a)(1)(A). Specifically, Plaintiff must show that: (a) TRAVELERS was distinctive at the time of registration and TRAVELLERS.COM is identical or confusingly similar to TRAVELERS; or (b) TRAVELERS was famous at the time of registration and TRAVELLERS.COM is identical or confusingly similar to or dilutive of TRAVELERS. 15 U.S.C. § 1125(a)(1)(A)(ii). TRAVELERS is a famous mark because the uncontradicted facts demonstrate that it has, for decades, been widely recognized by the general consuming public as an indicator that the users of the mark were associated with the Plaintiff. *See* 15 U.S.C. § 1125(c)(2)(A). As explained in Section V.A *supra*, TRAVELLERS.COM was and is confusingly similar to TRAVELERS. Consequently, the Court finds that TRAVELLERS.COM is being used in violation of the ACPA and is subject to forfeiture under § 1125(d)(2)(D).

VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED. As ordered on July 29, 2011, VeriSign shall change the registrar of the domain name TRAVELLERS.COM to CSC Corporate Domains, Inc. Furthermore, CSC Corporate Domains, Inc. shall register the domain name TRAVELLERS.COM in the name of Travelers Indemnity Company.

Because the Court grants summary judgment on Count I of Plaintiff's Complaint, the Court need not address Counts II and III.

November 28, 2011
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge